**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5651-16T1

LAWRENCE COWARD and
JESSIE COWARD,

     Plaintiffs-Appellants,

v.

CITY OF ENGLEWOOD (its Assignees,
Delegates, Employee/s, Supervisors, and/or
Managers) and RAYMOND ROMNEY (High
Level Supervisor for Department of Public
Works, City of Englewood Petrotechnik, LTD),

     Defendants-Respondents.

_____

LAWRENCE COWARD,

     Plaintiff-Appellant,

v.

CITY OF ENGLEWOOD (its Assignees,
Delegates, Employee/s, Supervisors, and/or
Managers), RAYMOND ROMNEY (High
Level Supervisor for Department of Public
Works, City of Englewood) (sued in his
official and individual capacities),
JAMES KOTH (High Level Supervisor

for City of Englewood, Department of Public Works, City of Englewood) (sued in his official and individual capacities), TIMOTHY J. DACEY (City Manager City of Englewood) (sued in his official and individual capacities), and ARIELLE GREENBAUM SAPOSH (Director of Human Resources) (sued in her official and individual capacities),

Defendants-Respondents.

Argued December 12, 2018 – Decided February 7, 2019

Before Judges Koblitz, Ostrer, and Currier.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-9075-14 and L-0965-15.

Eric V. Kleiner argued the cause for appellants (Eric V. Kleiner, attorney; Eric V. Kleiner and Rudie O. Weatherman, on the briefs).

Louis W. Childress, Jr. argued the cause for respondent Raymond Romney (Childress & Jackson, LLC, attorneys; Louis W. Childress, Jr., and Donald O. Egbuchulam, on the brief).

David J. Pack argued the cause for respondents the City of Englewood, James Koth, Timothy J. Dacey, and Arielle Greenbaum Saposh (Hanrahan Pack, LLC, attorneys; David J. Pack, of counsel and on the brief).

PER CURIAM

A-5651-16T1

Plaintiffs, Lawrence and Jessie Coward,[1] appeal from the June 22, 2017 order granting defendants' motions for summary judgment, and the August 8, 2017 order denying their motion for reconsideration.  Plaintiffs allege they were subjected to sexual harassment, a hostile work environment, and retaliatory conduct by their employer, defendant the City of Englewood (City), in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to - 49.  After reviewing the record in light of the contentions advanced on appeal and the applicable legal principles, we affirm.

We derive the facts from the summary judgment record, viewing them in the light most favorable to plaintiffs as the non-moving party.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).  Plaintiffs, a bi-racial married couple, were employed by different City departments at the time of the pertinent events.  Lawrence operated a sweeper truck for the Department of Public Works (DPW); Jessie worked as a confidential secretary for the Englewood Fire Department.

In July 2014, Jessie and a co-worker were walking to their cars in the City-owned public parking lot when they encountered another co-worker talking with

---

[1]  We refer to the plaintiffs collectively as plaintiffs and individually by their first names for the clarity of the reader.

A-5651-16T1

defendant Raymond Romney. Romney was Lawrence's supervisor at DPW. Jessie stated Romney approached her, "look[ed] [her] up and down," and then persistently asked "four or five times" for a hug. Jessie adamantly denied each of these requests, until Romney declared: "If you don't give me a hug, I am going to give Lawrence a crazy assignment tomorrow." Fearing her refusal would result in a retaliatory action against Lawrence, Jessie complied and leaned towards Romney for a hug. The hug lasted approximately thirty seconds (hug incident).

In her deposition, Jessie described the hug as a side hug, indicating there was space between their bodies but a touching of their hips. The co-worker who accompanied Jessie stated that "[w]ith [Jessie's] right arm she hugged [Romney] by patting his back, leaving space between them and never making physical contact."

A few days later, Jessie contacted Human Resources (HR) to report the incident. Fire Chief Gerald Marion, Jessie's supervisor, handled the complaint and instructed her to file a written statement at City Hall. Before she filed her statement, HR met with Jessie, promptly investigated the hug incident, removed Romney from supervising Lawrence, and suspended Romney for ten days

4

without pay. In her deposition testimony, Jessie conceded Romney only "harassed" her on this one occasion.

Following the hug incident, Lawrence claims he was retaliated against on four occasions. The first event occurred two days after the hug incident. Romney called Lawrence using a speakerphone and asked whether Lawrence and a co-worker were leaving early (speakerphone incident). Lawrence replied: "I don't know where the hell that white boy is going." Romney informed Lawrence that using racial language was inappropriate and directed him to apologize to the employee. After the incident was investigated by a different HR representative than the one investigating the hug incident, HR recommended Lawrence be suspended for three days without pay. Lawrence did not dispute this charge.

The second incident occurred in October 2014. Lawrence filed a complaint with HR, alleging he was previously "threatened by a Supervisor that [he] would be put on the back of a garbage truck and for the past [three] days and counting [he] [had] been assigned to perform as a laborer on the back of a garbage truck" (garbage truck incident).

In response, the City proffered evidence that it was short-staffed during the week in question. It was both a holiday week and the first week of the "leaf

5

collection program," placing a heavy burden on DPW staff because collections were done daily and "pre-approved vacation and last minute sick calls depleted the availability of manpower." As a result, "many staff performed work that they may not have normally been assigned to do in the course of a normal day."

The third incident occurred two weeks later. On that day, Lawrence's truck "rolled away" and inflicted minor damage to a City tree because he was "not present in the operator[']s position of the vehicle" (rolling truck incident). Two workers witnessed the incident and both claimed Lawrence was distracted because he was "on the phone via his Bluetooth earpiece." Lawrence had received previous warnings and reprimands for wearing headphones while operating City-owned vehicles.

The fourth incident occurred in December. Lawrence called in, during work hours and while operating a City vehicle, to "a live radio broadcast of the Howard Stern Show." He participated for fifteen minutes in the "worst caller of all time" contest (Howard Stern Incident). As a result of the previous warnings about using wireless devices while operating City vehicles, the preliminary notice of major disciplinary charges declared: "Due to [Lawrence's] flagrant disregard of [the] City policy[,] which jeopardizes [his] safety, the safety of [his]

colleagues, and the safety of the general public," it was recommended he receive a ten-day unpaid suspension.

On January 29, 2015, a disciplinary hearing was held on the rolling truck and Howard Stern incidents. Lawrence was represented by counsel, pled guilty to both violations, and received a ten-day unpaid suspension.

Lawrence filed four additional incident reports in support of his claim of a hostile work environment. The reports alleged he was accused of not washing the sweeper, was "yelled at" for being on DPW property while suspended, was not allowed to operate the newer sweeper after his suspension, and was denied his request to work through lunch. HR investigated each of the allegations and found no wrongdoing on the part of the City.

Following discovery, the parties moved for summary judgment. On June 22, 2017, Judge Rachelle L. Harz granted defendants' motion for summary judgment in a thorough, well-reasoned written decision. In dismissing Jessie's sexual harassment claims, Judge Harz found "Romney had absolutely no supervisory control over Jessie," and the City had promptly investigated and reprimanded Romney.

Lawrence's hostile work environment claim was dismissed because the incident reports did not reach the required threshold of "severe and pervasive" conduct.  See Lehmann v. Toys 'R' Us, Inc., 13 N.J. 587, 603 (1993).

Judge Harz determined the City had not retaliated against Lawrence because it had "demonstrated legitimate, non-discriminatory reasons for disciplining" him for the speakerphone and garbage truck incidents.  Lawrence was also precluded from claiming retaliation for the rolling truck and Howard Stern incidents because he did not deny wrongdoing and had representation when he pled guilty to the disciplinary charges.  Finally, Judge Harz found that "[b]ecause all LAD claims against the City [were] dismissed . . . there [could] be no aiding and abetting imposed upon any individual supervisors and employees of the City."

On August 8, 2017, Judge Harz denied plaintiffs' motion for reconsideration, finding in a written opinion that plaintiffs had failed to establish their burden of proof for reconsideration.

On appeal, plaintiffs argue: 1) the trial court disregarded the Brill standard and decided genuinely disputed material issues of fact; 2) the trial court erred in dismissing their LAD claims; 3) the trial court failed to consider Romney's

individual liability; and, 4) the trial court misapplied the law as to the City's municipal liability.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). We must consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., 396 N.J. Super. 486, 494 (App. Div. 2007)). Issues of law are reviewed de novo, without according deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We are unpersuaded by plaintiffs' arguments, and affirm substantially for the reasons expressed by Judge Harz in her June 22 and August 8, 2017 written decisions. We add only the following comments.

Jessie's complaint asserted sexual harassment claims against Romney. To survive a motion for summary judgment on a sexual harassment claim, a plaintiff must prove by a preponderance of the evidence: that she was subjected to unwelcome sexual harassment; that the harassment was based on her sex; that the sexual harassment was so pervasive as to alter the condition of her employment and create an abusive working environment; and that the City knew or should have known of the harassment, and failed to take prompt remedial action. Lehmann, 132 N.J. at 603-04.

An employer can only be strictly liable for harassment by its employee if the employee who commits the harassment is a supervisory employee, who is acting within the scope of his or her employment, and the supervisor's conduct results in a hostile work environment. Id. at 619-20.

As the trial judge noted, Jessie failed to demonstrate that Romney's behavior was severe or pervasive. Even though a "single incident, if severe enough, can establish a prima facie case of a hostile work environment," this only occurs in a "rare and extreme case." Taylor v. Metzger, 152 N.J. 490, 500, 508 (1998) (quoting Lehmann, 132 N.J. at 606); (finding a single utterance of a racial epithet was sufficient); Flizack v. Good News Home for Women, Inc., 346 N.J. Super. 150, 156, 159 (App. Div. 2001) (finding the supervisor's derogatory

comment coupled with grabbing the plaintiff's breast was sufficient). We are satisfied this brief isolated hug, which occurred in a public parking lot in the presence of a third employee, does not meet the threshold required to establish a prima facie hostile work environment claim.

In addition, it is undisputed that Romney was not Jessie's supervisor. He was a supervisor for DPW, not the Fire Department. Therefore, the City could not be liable for Romney's alleged harassment of a co-worker. See Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 146 (App. Div. 1999) (stating employers are liable for the harassment of co-workers only when the employer knew or should have known of the harassment). There was no evidence presented that the City had any reason to know or suspect any inappropriate behavior on Romney's part towards Jessie or any co-worker.

Next, we consider, and reject, Lawrence's assertion that he presented a prima facie case of a hostile work environment. To withstand the entry of summary judgment, a plaintiff must prove by a preponderance of the evidence "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v.

11

Hunterdon Developmental Ctr., 174 N.J. 1, 24 (2002) (citing Lehmann, 132 N.J. at 603-04).

We are unpersuaded that the four incident reports created a hostile work environment. Commonplace disputes are not "severe or pervasive" conduct under the LAD. See Shepherd, 174 N.J. at 25-26. Similarly, a "general complaint of unfair treatment" is not a claim under the LAD. Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366, 377 (App. Div. 2014) (quoting Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995)). Lawrence's incident reports allege mere commonplace disputes insufficient to establish a hostile work environment.

We also are satisfied Lawrence failed to demonstrate a prima facie case of retaliation under the LAD. To establish a claim, a plaintiff must show: "(1) [he] was in a protected class; (2) [he] engaged in [a] protected activity known to the employer; (3) [he] was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Victor v. State, 203 N.J. 383, 409 (2010). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate reason for the employment decision. Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div.

1996).  If the defendant does so, the burden shifts back, and the plaintiff must then prove the employer's proffered explanation is merely a pretext for discrimination.  Ibid.

"[A]n employer's filing of a disciplinary action cannot form the basis of a LAD complaint" because an "employee who has complained about discrimination does not thereafter obtain 'immunity from . . . basic employment policies or . . . disciplinary procedures.'"  Shepherd, 174 N.J. at 26 (quoting Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001)).  Here, there was unrebutted evidence that Lawrence committed actual infractions, prompting the City's disciplinary actions.

The City has established non-discriminatory disciplinary measures were implemented for the rolling truck and the Howard Stern incidents.  "When plaintiffs are afforded a hearing and represented by counsel, plaintiffs 'cannot claim that . . . substantiated disciplinary charges and resulting brief suspensions from work [are] retaliatory.'"  Beasley v. Passaic Cty., 377 N.J. Super. 585, 607 (App. Div.  2005) (alterations in original) (quoting Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002)).  Lawrence participated in disciplinary hearings on these respective charges with counsel, pled guilty to the charges, and received a ten-day unpaid suspension.

Lawrence has also failed to establish the garbage truck incident was retaliatory. See Nabisco Foods, 290 N.J. Super. at 274. To rebut Lawrence's claim, the City offered evidence it was short-staffed because of the holiday and leaf collection program, requiring the remaining employees to perform different tasks than usual. See Nardello v. Twp. of Voorhees, 377 N.J. Super. 428, 434 (App. Div. 2005) ("[N]ot every employment action that makes an employee unhappy constitutes 'an actionable adverse action.'") (quoting Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 378 (Law Div. 2002)). Lawrence provided no evidence to contradict the City's reasons for its actions and, therefore, failed to establish they were merely a pretext for discrimination. See Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999) (The plaintiff "need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons." (quoting Kelly v. Bally's Grand, Inc., 285 N.J. Super. 422, 432 (App. Div. 1995))).

Finally, plaintiffs' argument that Romney is individually liable is also misplaced. There is no individual liability for aiding or abetting absent a finding that the employer violated the LAD. Failla v. City of Passaic, 146 F. 3d 149, 159 (3d Cir. 1998). As neither Jessie nor Lawrence have pled cognizable LAD claims, Romney cannot be held individually liable.

14

Plaintiffs' remaining arguments lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5651-16T1